UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| JANICE COX | ) | |
| | ) | |
| v. | ) | No. 1:03-0029 |
| | ) | Judge Nixon |
| JO ANNE B. BARNHART, | ) | Magistrate Judge Griffin |
| Commissioner of Social Security | ) | |

To: The Honorable John T. Nixon, Senior District Judge

## REPORT AND RECOMMENDATION

The plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration denying the plaintiff's applications for Disability Insurance Benefits ("DIB") as provided by the Social Security Act.

The plaintiff filed an initial application for DIB on April 22, 1997, alleging disability beginning November 11, 1995. (Tr. 485-87). Her application was denied initially and upon reconsideration. Upon the plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on May 20, 1998, after which, by decision dated July 15, 1998, the ALJ found that the plaintiff was not disabled (Tr. 30-40). On December 13, 1999, the Appeals Council ("AC") denied the plaintiff's request for review. (Tr. 12-13). The plaintiff did not seek judicial review of that decision.

On February 8, 2000, the plaintiff filed a new application for DIB, again alleging disability beginning on November 11, 1995, due to depression, nervousness, bursitis, arthritis, chronic pain in her left shoulder, tarsal tunnel syndrome in both feet, COPD, and Hepatitis A and C. (Tr. 71-74, 56). This application was denied initially and upon reconsideration. (Tr. 57-64). Upon the

plaintiff's request, a hearing was held on March 13, 2002, at which time the plaintiff and her counsel appeared. (Tr. 736-770). On May 16, 2002, the Administrative Law Judge ("ALJ") issued his decision finding the plaintiff not disabled at any time from July 16, 1998, the date following the previous ALJ decision, through December 31, 2001, the date the plaintiff was last insured for disability benefits.[1] (Tr. 22-29). This decision became final when the Appeals Council denied review on January 17, 2003. (Tr. 10-11).

Pending before the Court is the plaintiff's motion for judgment on the administrative record (Docket Entry No. 16), and the defendant's motion for judgment on the administrative record (Docket Entry No. 20).

## I. STATEMENT OF FACTS

The plaintiff was born on June 12, 1953, making her 48 years old at the time of the hearing. (Tr. 739). She finished the tenth grade (Tr. 739), and can read "simple like things" and add and subtract "some" (Tr. 742). A Wide Range Achievement Test administered December 8, 2000, showed that the plaintiff reads at the fourth grade level, spells at the sixth grade level, and can perform fourth grade arithmetic skills. (Tr. 418). In the past, she has worked as a packer at Frito Lay, a waitress, a relief machine operator, a crane machine operator, a motel maid, and at a donut shop. (Tr. 740-42).

---

[1] As the plaintiff acknowledges (Docket Entry No. 17, at 4), the prior ALJ decision has a res judicata effect on the period of time prior to the date of that decision, July 15, 1998. The findings of fact in that decision are binding, absent proof of changed circumstances. Dennard v. Secretary of Health and Human Servs., 907 F.2d 598 (6th Cir. 1990).

2

Case 1:03-cv-00029   Document 23   Filed 08/30/05   Page 2 of 17 PageID #: 2

In May or June of 1995, the plaintiff's ankles began to hurt as a result of her having to be "up and down on her toes frequently" while working at Frito Lay. (Tr. 271, 274).[2] In March of 1996, the plaintiff was diagnosed with bilateral tarsal tunnel syndrome. (Tr. 274). Dr. Randall Davidson performed tarsal tunnel release surgery on the plaintiff's right foot on March 4, 1996, and on her left foot on July 29, 1996. (Tr. 276-77, 313-14). On April 18, 1997, Dr. Davidson indicated that the plaintiff had reached maximum medical improvement. (Tr. 262). He gave the plaintiff a permanent restriction of being on a sitting job only and being unable to use foot pedals. (Id.) Although the plaintiff continued to have intermittent pain in her feet, in February of 1998, Dr. Davidson opined that no further treatment was needed. (Tr. 258). On December 17, 1998, Dr. Davidson noted that the plaintiff's ankle had a full range of motion and that she had "no instability on either the right or the left." (Tr. 256). Dr. Davidson encouraged the plaintiff to work on an exercise program and to follow up in one year. (Id.) Over the next year, however, the plaintiff visited Dr. Davidson on four occasions, complaining mostly of tenderness over the scars caused by the surgeries. (Tr. 254-56). On January 20, 2000, the date the plaintiff last saw Dr. Davidson, she had a full range of motion of the ankle with intact sensation and no edema. (Tr. 254).

The plaintiff received treatment at the Eastside Family Medical Clinic beginning in June of 1999, where she was seen primarily by Lisa Weaver, a family nurse practitioner. (Tr. 284-311, 442-50). Office records document routine, conservative treatment for arthritis, joint pain, chronic obstructive pulmonary disease, bronchitis, and gastritis. (See id.).

---

[2]Because the plaintiff is only five feet tall, she had to stand on her toes at Frito Lay, most likely so she could either place or reach items on shelving. (See Tr. 744)

3

The plaintiff was involved in a motor vehicle accident on July 24, 2000, and was taken to the hospital. (Tr. 369). In the emergency room, the plaintiff complained of a "needle like sensation from [her] neck all the way down [her] back." (Id.) Thoracic and cervical x-rays and a head CT were normal. (Tr. 373-74).

After the accident, the plaintiff returned to see Ms. Weaver on seven different occasions: July 27, 2000 (Tr. 284); August 3, 2000 (Tr. 448); September 7, 2000 (Tr. 448); September 25, 2000 (Tr. 447); January 4, 2001 (Tr. 446); May 22, 2001 (Tr. 445); and May 26, 2001 (Tr. 444). In a physical capacities evaluation completed by Ms. Weaver, the plaintiff was limited to sitting for four hours (one to two hours without interruption), standing and/or walking for two to four hours (less than one hour without interruption), and occasionally lifting and/or carrying up to ten pounds. (Tr. 436-37). Ms. Weaver opined that the plaintiff would be unable to work eight hours a day, 40 hours a week, on a regular and continuing basis. (Tr. 437).

On October 26, 2000, the plaintiff was seen by Dr. Richard Fishbein, an orthopedist, upon referral by an attorney. (Tr. 439). Upon examination, Dr. Fishbein noted that the plaintiff had "constant and severe back and low back pain with occasional numbness," poor posture, and a limited cervical range of motion due to tightness and spasm. (Id.) However, there was no evidence of neurologic, motion and/or sensory deficit, and, as the ALJ noted, no mention of any foot problems. (Tr. 24). Dr. Fishbein prescribed physical therapy. (Tr. 439). From September 15, 2000, to October 9, 2000, and from November 6, 2000, to December 8, 2000, respectively, the plaintiff underwent two courses of physical therapy. (Tr. 388-401, 404-15). On October 30, 2000, in between the courses of physical therapy, Dr. Fishbein ordered cervical and lumbar MRIs. (Tr. 402-03). The results of these examinations were interpreted as normal. (Id.)

In a letter dated May 3, 2001, Dr. Fishbein noted that the automobile accident caused an exacerbation of the plaintiff's pre-existing arthritic problems and that the plaintiff had intractable chronic low back and cervical pain. (Tr. 438). He also noted that the plaintiff had open-heart surgery in 1969, bilateral tarsal tunnel surgery in 1996, and had a medical history that included emphysema and COPD. (Id.) Dr. Fishbein found a ten percent impairment to the body as a whole, and restricted the plaintiff from lifting greater than 10 pounds, maximally 20 pounds. (Id.)[3]

In a letter dated October 31, 2001, Roger Bailey, a chiropractor, noted that the plaintiff was "improving with her neck and back injuries" but that the surgeries to her feet have "[thrown] off her gait, which exacerbates her spinal weakness left from the accident." (Tr. 452).

Dr. Mohamed Ziauddin first saw the plaintiff on December 13, 2001. (Tr. 458). He diagnosed chronic obstructive pulmonary disease, reflux esophagitis, dyspepsia, a history of a heart operation at age 14, and palpitations. (Id.) Although Dr. Ziauddin noted that the plaintiff had been treated in 1996 for tarsal tunnel release on both feet (see id.), his notes do not reflect any complaints by the plaintiff of continued problems with her feet at either the initial or subsequent visits. (Tr. 25). Dr. Ziauddin strongly advised the plaintiff to quit smoking and to use inhalers. (Tr. 459).

On February 13, 2002, Dr. Ziauddin once again strongly advised the plaintiff to quit smoking. (Tr. 457). He opined that the plaintiff had tendinitis in her left shoulder. (Id.) On March 14, 2002, Dr. Ziauddin noted that the plaintiff had chronic obstructive pulmonary disease but still continued to smoke. (Tr. 456). He also found that the plaintiff had generalized osteoarthritis and

---

[3]Although the plaintiff was apparently referred to Dr. Fishbein for his opinion of her impairment as a result of the car accident, it appears that he became a treating physician since he referred to having seen the plaintiff "over an extended period of time," from July of 2000, to May of 2001. (Tr. 438).

5

tendinitis of the left shoulder, weakness of the hand grip, and significant pain in her hips and knees. (Id.) In a form dated March 14, 2002, Dr. Ziauddin found that the plaintiff was not able to work eight hours a day, 40 hours a week, on a regular and continuing basis due to "extensive osteoarthritis involving the hands, hips, and knees with bursitis of the right hips," and that her medical condition could reasonably be expected to produce severe pain and fatigue. (Tr. 454-55).

At the March 13, 2002, hearing, the plaintiff testified that she stopped working in 1995, due to foot problems (Tr. 743). The plaintiff claimed that she has been unable to work due to bad nerves, depression, tarsal tunnel syndrome in both feet, bursitis of the right hip, arthritis in both hands, chronic pain in her AC joint, chronic obstructive pulmonary disease, and hepatitis A and C. Although she had surgery on her feet in 1996, they were still numb and cold, as though they were "[frozen] on the inside and they feel like when your feet are asleep." (Tr. 744). The plaintiff testified that she uses a wheelchair when she goes to the grocery store (Tr. 746-47), can only stand for ten to fifteen minutes at the stove or sink, and soaks her feet in water three or four times a day (Tr. 750).

In his decision, the ALJ made the following findings:

1. The claimant met the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through December 31, 2001, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since November 11, 1995.

3. The claimant has tarsal tunnel syndrome, bursitis of the left hip, osteoarthritis, and chronic obstructive pulmonary disease, a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. Prior to December 31, 2001, the claimant had the residual functional capacity to lift and/or carry 10 pounds, sit 6 hours, stand and/or walk 2 hours; with a sit/stand option; occasionally push/pull, reach, climb, balance, stoop, kneel, crouch, or crawl; avoid exposure to fumes, odors, dusts, gases, and poor ventilation. There was a moderate limitation in work tolerance and ability to work with supervisors and coworkers.

7. Prior to December 31, 2001, the claimant was unable to perform any of her past relevant work (20 CFR § 404.1565).

8. As of December 31, 2001, the claimant was a younger individual aged 45 to 49 (20 CFR § 404.1563).

9. The claimant has a limited, tenth grade education (20 CFR § 404.1564).

10. The claimant has no transferable skills from any past relevant work (20 CFR § 404.1568).

11. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.18 as a framework for decision-making, there were a significant number of jobs in the national economy that she could perform prior to December 31, 2001. Examples of such jobs are identified above.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through December 31, 2001, the date last insured for disability benefits (20 CFR § 404.1520(f)).

(Tr. 28).

## II. DISCUSSION

A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her conclusion. 42 U.S.C. §§ 405(g) and 1382(c)(3); Richardson v. Perales, 402 U.S. 389, 91 S. Ct.

7

1420, 28 L. Ed. 2d 842 (1971); Gibson v. Secretary of Health, Education & Welfare, 678 F.2d 653 (6th Cir. 1982). The Commissioner's decision must be affirmed if it is supported by substantial evidence, even if the Court might have decided the case differently based on substantial evidence to the contrary. Her v. Commissioner of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999). A reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. It is more than a mere scintilla of evidence. Richardson, supra; Le Master v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Court must accept the ALJ's explicit findings and determination unless the record, as a whole, is without substantial evidence to support the ALJ's determination. Houston v. Secretary of Health & Human Servs., 736 F.2d 365, 366 (6th Cir. 1984); Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

B. Proceedings at the Administrative Level

The Commissioner must employ a five-step evaluation process in determining the issue of disability. The five steps are as follows: (1) If claimant is doing substantial gainful activity, she is not disabled; (2) If claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled; (3) If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry; (4) If claimant's impairment does not prevent her from doing her past relevant work, she is not disabled; (5) Even if claimant's impairment does prevent

8

her from doing her past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors, such as age, education, and past work experience, she is not disabled.[4] See 20 C.F.R. § 404.1520. See also Tyra v. Secretary of Health & Human Servs., 896 F.2d 1024, 1028-29 (6th Cir. 1990); Farris v. Secretary of Health & Human Servs., 773 F.2d 85, 88-89 (6th Cir. 1985); Mowery v. Heckler, 771 F.2d 966, 969-70 (6th Cir. 1985); Houston, supra.

The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. Id. See 42 U.S.C. § 1382c(a)(3)(C); 20 C.F.R. §§ 404.1512 (a), (c), 404.1513(d); Landsaw v. Secretary of Health & Human Servs., 803 F.2d 211, 214 (6th Cir. 1986); Tyra, 896 F.2d at 1028-29. However, the Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 432(d)(2)(C); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

Once the plaintiff establishes a *prima facie* case that she is unable to perform her prior relevant employment, the burden shifts to the Commissioner to show that the plaintiff can perform other substantial gainful employment, and that such employment exists in the national economy. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980); Hephner, supra. To rebut a *prima facie* case, the Commissioner must come forward with particularized proof of the plaintiff's individual vocational qualifications to perform specific jobs. O'Banner v. Secretary of Health, Education & Welfare, 587 F.2d 321 (6th Cir. 1978).

---

[4]This latter factor is considered regardless of whether such work exists in the immediate area in which plaintiff lives or whether a specific job vacancy exists or whether the plaintiff would be hired if he applied. Ragan v. Finch, 435 F.2d 239, 241 (6th Cir. 1970).

9

Analyzing the evaluation process at step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since November 11, 1995. (Tr. 28). At step two, the ALJ determined the evidence established that the plaintiff had tarsal tunnel syndrome, bursitis of the left hip, osteoarthritis, and chronic pulmonary disease, and that a combination of the impairments constituted severe impairments. (Id.) At step three, the ALJ found that the medical evidence in the record did not indicate that the plaintiff had any impairments that met the criteria of any of the listed impairments in 20 C.F.R. Part 404, Subpart P. Appendix 1. (Id.) At step four, the ALJ determined that the plaintiff could not perform past relevant work. (Id.) When asked if there were jobs in the national economy that could be performed by an individual with the plaintiff's described residual functional capacity, a Vocational Expert ("VE") identified a significant number of jobs. (Id.) Specifically, the VE cited the examples of grader/sorter, assembler, and packager and filler. (Tr. 27, 767). Therefore, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act and not entitled to DIB. (Tr. 27-28).

C. The Plaintiff's Assignments of Error

1. Dr. Ziauddin

The plaintiff first argues that the ALJ erred by failing to give controlling weight to the opinion of Dr. Mohamed Ziauddin, who, on March 14, 2002, opined that the plaintiff was not able to work eight hours a day, 40 hours a week, on a regular and continuing basis. (Tr. 454-55).

The ALJ noted that:

> Prior to December 31, 2001, the record does not support a finding that the claimant was unable to perform activities of at least sedentary exertion for a

10

continuous period of at least 12 months. Although the claimant continues to have pain in her feet following surgery in 1996, there was improvement with medication and aquatic therapy. As of January 2000, there was full range of motion of the ankle with intact sensation and no edema. There was no specific treatment with regard to her feet after January 2000. The objective evidence does not support the level of pain alleged, and medical records are for routine, conservative treatment.

(Tr. 26).

Inasmuch as the ALJ found that "prior to December 31, 2001, this record does not support a finding that the claimant was unable to perform activities . . ." (emphasis added), the Court finds that the ALJ implicitly rejected Dr. Ziauddin's March 14, 2002, opinion.

Even if the March 14, 2002, assessment was properly considered as reflective of the plaintiff's medical condition prior to December 31, 2001, the Court finds that the ALJ articulated good reasons for failing to give controlling weight to Dr. Ziauddin's opinion since it was contradicted by substantial evidence in the record and was inconsistent with the record as a whole. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Cutlip v. Secretary of H.H.S., 25 F.3d 284, 287 (6th Cir. 1995). Specifically, as noted by the ALJ, Dr. Ziauddin's own records do not support such a finding as they reveal conservative treatment and do not substantiate the level of pain alleged. (Tr. 456-59). In addition, the lack of limitations or restrictions imposed by Dr. Fishbein (Tr. 24, 438-41) provides good reasoning for the ALJ's failure to give controlling weight to Dr. Ziauddin.

2. Nurse Practitioner Weaver

The plaintiff next argues that the ALJ should have afforded the opinions of Ms. Weaver, a nurse practitioner, more weight. In response, the defendant argues that a nurse practitioner is not

an acceptable medical source in accordance with the Commissioner's regulations. See 20 C.F.R. § 404.1513(a). Although the Court of Appeals for the Sixth Circuit has not addressed this issue, this Court is persuaded by the decisions of the Courts of Appeals for the Eighth and Tenth Circuits on this issue.

In Shontos v. Barnhart, 322 F.3d 532, 539 (8th Cir. 2003), the Court of Appeals for the Eighth Circuit accepted the ALJ's finding that a nurse practitioner was not an "acceptable medical source," since nurse practitioners are not listed in 20 CFR §§ 404.1513(a). However, the Court found that a nurse practitioner qualified as an "other medical source" under § 404.1513(d) and that an opinion given by a nurse practitioner could also be considered as a "medical opinion" in accord with 20 C.F.R. § 404.1527. Similarly, in Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000), the Court of Appeals for the Tenth Circuit found that nurse practitioners and "other" medical sources are not entitled to the same significant weight as physicians.

Furthermore, 20 C.F.R. § 404.1513(d)(1) provides that "in addition to evidence from the acceptable medical sources ... we *may* also use evidence from other sources to show the severity of your impairments." 20 C.F.R. § 404.1513(d)(1)(emphasis added).

In this case, the ALJ did not ignore the opinions of the nurse practitioner. Instead, he considered the entire record, including the opinions of Ms. Weaver. However, the ALJ chose to afford greater weight to the assessment completed by orthopedist Dr. Richard E. Fishbein, who specifically stated that he reviewed the medicals records of Ms. Weaver. (Tr. 26, 438).[5] The ALJ also found that the treating records, as well as the record as a whole, did not support the limitations assessed by Ms. Weaver, and referred to substantial evidence to support his conclusion. (Tr. 26).

---

[5]The Court notes that Dr. Fishbein referred to Ms. Weaver as "Dr." Weaver. (Tr. 438).

12

3. The plaintiff's manual dexterity limitations

The plaintiff argues that the ALJ failed to take into account her impaired manual dexterity. Specifically, the plaintiff references a report from Dr. Davidson identifying swelling in the plaintiff's fingers and hands and "some triggering in [the plaintiff's] right thumb" (Tr. 254), a report from Dr. Ziauddin noting that the plaintiff had "weakness of the hand grip" (Tr. 456), a manual speed and dexterity examination administered by Dana Gordon, a vocational evaluator, noting that the plaintiff did "poorly" (Tr. 418-19), and the plaintiff's own testimony regarding the weakness in her hands (Tr. 756-57). In addition, she relies on the VE's testimony that, if the plaintiff could not perform fine manipulation with her hands, it would eliminate the sedentary jobs he identified. (Tr. 767).

An ALJ is required to consider the effects of all impairments on an individual's ability to work. 20 C.F.R. § 404.1523. As a general rule, limitations of fine manual dexterity have more significance in determining sedentary ranges of work than in medium ranges of work, because sedentary jobs commonly require dexterity. See SSR 85-15; SSR 96-9p. However, there is no indication in the record that the plaintiff's alleged limitation has any more than a minimal impact on her ability to perform work-related activities or that she is unable to perform fine manipulation.

4. The Medical-Vocational Guidelines

The plaintiff's final argument is that the ALJ erred in using the Medical-Vocational Guidelines (commonly referred to as the "Grid") given the existence of significant non-exertional limitations. The plaintiff argues that the ALJ failed to ask the VE about the effects of the additional

13

limitations the ALJ included in his decision, specifically the limitations of occasionally pushing/pulling, reaching, climbing, balancing, stooping, kneeling, crouching, or crawling; avoiding exposure to fumes, odors, dusts, gases, and poor ventilation; and a moderate limitation in work tolerance and ability to work with supervisors and coworkers (Tr. 28).

The Medical-Vocational Guidelines take into account a plaintiff's "exertional" impairment, that is, "an impairment which manifests itself by limitations in meeting the strength requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When a plaintiff suffers from an impairment that significantly diminishes her capacity to work but does not manifest itself as a limitation on strength, for example, when a plaintiff suffers from a mental illness, manipulative restrictions, or heightened sensitivity to environmental contaminants, rote application of the grid is inappropriate. See Hurt v. Secretary of Health & Human Servs., 816 F.2d 1141, 1143 (6th Cir. 1987); Shelman v. Heckler, 821 F.2d 316, 322 (6th Cir. 1987); Kimbrough v. Secretary of Health & Human Servs., 801 F.2d 794, 796 (6th Cir. 1986).

In the case of an individual who suffers from both exertional and nonexertional impairments, where the grid does not yield a finding of "disabled" when the exertional impairments are considered alone, the grid may be employed only as a "framework" to provide guidance. See 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e)(2). While the grid can still be used as "framework" to provide guidance, it is improper to apply the grid to direct a finding of not disabled when the plaintiff has significant nonexertional impairments. See Abbott v. Sec'y of Health and Human Servs., 905 F.2d 918, 927 (6th Cir. 1990).

a. The plaintiff is estopped from arguing that the ALJ should have introduced her non-exertional limitations to the VE

14

The doctrine of collateral estoppel bars relitigation of an issue decided in a previous proceeding if: (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue. Hammer v. I.N.S., 195 F.3d 836, 840 (6th Cir.1999).

In his decision, the ALJ wrote:

> Pursuant to Social Security Ruling 96-6p, I have considered the opinions of the state agency consultants regarding the claimant's functional capacity. While they are generally consistent with the record as a whole, the rulings in Dennard and Drummond require a finding that the claimant is limited to no more than sedentary exertion.
> Accordingly, based on Acquiesence Rulings 98-3(6) and 98-4(6), the prior decision issued July 15, 1998, and the evidence in the current record, prior to December 31, 2001, the claimant retained the residual functional capacity to perform sedentary work activities, which is described as the ability to lift and/or carry ten pounds, sit six hours, stand and/or walk two hours; with a sit/stand option; occasionally push/pull, reach, climb, balance, stoop, kneel, crouch, or crawl; avoid exposure to fumes, odors, dusts, gases, and poor ventilation.

(Tr. 26-27).

In Dennard v. Sec'y of Heath & Human Servs., 907 F.2d 598 (6th Cir.1990), two different ALJs had made different findings as to the exertional level of the plaintiff's past work. The first ALJ found that the plaintiff was not able to perform his past job and could only perform sedentary work. The second ALJ found that plaintiff could perform his past work, relying on a definition of the job from the Dictionary of Occupational Titles indicating it was sedentary. The Court determined the second ALJ was bound by the determination of the first ALJ. In Drummond v. Commissioner, 126 F.3d 837 (6th Cir.1997), the Court of Appeals for the Sixth Circuit found that "absent evidence

15

of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." 126 F.3d at 842.

Since the plaintiff's non-exertional limitations exhibited no significant change between July 15, 1998, the date of the first decision, and December 31, 2001, the date the plaintiff was last insured for disability benefits, the ALJ was bound by the findings in the first decision. Thus, the ALJ did not err by failing to ask the VE about the effects of the limitations.

b. The plaintiff's nonexertional limitations do not significantly compromise the sedentary occupational base

Assuming, *arguendo*, that the ALJ was not bound by the findings regarding non-exertional limitations in his first decision, the limitations do not significantly compromise the sedentary occupational base. See Social Security Ruling 83-12, 1983 31253 (the need to avoid fumes, odors, gasses and poor ventilation does not significantly compromise the sedentary occupational base); Social Security Ruling 83-14, 1983 WL 31254 (to perform substantially all of the exertional requirements of the sedentary occupational base, crouching is not necessary); Social Security Ruling 85-15, 1985 WL 56857 (if a person can stoop, kneel, and crawl occasionally, has some limitation in climbing and balancing, and can occasionally push and pull, the sedentary occupational base remains virtually intact.)

III. RECOMMENDATION

For the above stated reasons it is recommended that the plaintiff's motion (Docket Entry No. 16) be DENIED, the defendant's motion for judgment on the administrative record (Docket Entry No. 20) be GRANTED, and that the decision of the Commissioner be AFFIRMED.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice and must state with particularity the specific portions of this Report and Recommendation to which the objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's order. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge